```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| MARVIN MINOR,<br><br>        Petitioner,<br><br>v.<br><br>KELLY RYAN,<br><br>        Respondent. | No. 14-cv-12293-IT |

**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (Dkt. No. 1)**

Cabell, U.S.M.J.

### I. INTRODUCTION

Marvin Minor ("the petitioner") is currently incarcerated at the Massachusetts Correctional Institute at Cedar Junction following his conviction in the Suffolk County Superior Court on a number of firearm possession related charges. He argues in his petition for habeas relief that the trial court committed reversible error when it excluded evidence that an individual found with the petitioner at the time of his arrest had gunshot residue on his hands – evidence the petitioner argues tended to show that this other person rather than the petitioner possessed the firearm. After careful consideration of the record, and for the reasons set forth below, I recommend that the habeas petition be DENIED.

## II.  FACTS

As the Massachusetts Appeals Court's decision did not include findings of fact, the facts as the jury might have found them are taken from the trial transcript, except as otherwise noted. *See Jean-Baptiste v. Thompson*, No. 14-cv-11698, 2017 WL 1014995, at *1 (D. Mass. March 15, 2017).

On the morning of May 8, 2008, Boston Police responded to a 911 caller who reported that he had just witnessed a shooting. (Dkt. No. 39, State Record [hereinafter S.R.] 104-105).[1] The caller stated that an Oldsmobile had pulled up, a shooter had gotten out of the vehicle and shot somebody, and then returned to the vehicle and fled the scene. (S.R. 105). The caller also reported that a second man was driving. (Id.) When officers arrived at the scene of the crime they found broken pieces of a car window, and the victim who had been shot. (Id.). After talking with witnesses, police officers learned that the car that had fled the scene of the shooting was a gold Oldsmobile with tinted windows. (Id.). The officers at the scene then alerted other officers in the area that they should be looking for a gold

---

[1] Evidence related to the 911 call and the scene of the shooting were not presented to the jury because the trial court granted the petitioner's motion to exclude any mention of the petitioner's previous bad acts, including any reference to the shooting. The facts in this paragraph are thus taken from the Superior Court's memorandum of decision and order on the motion to suppress. (S.R. 104-110).

2

Oldsmobile with tinted windows, two occupants, and a missing window. (S.R. 105-106).

Within minutes of the original 911 call, officers stopped a tan Oldsmobile with tinted windows and a missing passenger side window, not far from the original scene of the crime. (S.R. 105-106, 685-686, 713, 772). The vehicle contained two occupants, the petitioner, who was driving, and a passenger, Dana Tate ("Tate"). (S.R. 689, 773). Upon speaking with officers at the scene of the crime to match the description of the vehicle, the officers arrested the petitioner and Tate. (S.R. 105-107, 694-695).

An initial check of the interior of the vehicle for weapons produced no evidence of firearms. (S.R. 693-695, 713-715, 718-719). The officers then searched the trunk of the vehicle and found a bulletproof vest, a gun with no serial number, and a loaded, high capacity magazine. (S.R. 697, 704-705, 715, 720, 784-785, 787, 789-790, 823, 842-845, 862). The gun found in the trunk was not the same gun that was used in the shooting; in fact, the gun that was used in the shooting was never located. (S.R. 626-627).

The petitioner and Tate were each tested for gunshot residue (G.S.R.) after their arrest. (S.R. 622, 624).[2] Tate tested

---

[2] Evidence related to the G.S.R. testing was not presented to the jury because G.S.R. evidence was excluded from trial. The facts related to the G.S.R. evidence in this section are taken from the pre-trial transcript relating to motions in limine. (S.R. 622-632).

3

positive for G.S.R. on his hands; the petitioner tested negative. (S.R. 622).

The Oldsmobile the petitioner was driving on the night of his arrest was registered to the petitioner's father, Marvin Minor, Sr. (S.R. 938, 942). The petitioner's father regularly let the petitioner borrow the vehicle, and had loaned the petitioner the vehicle in the days leading up to the petitioner's arrest. (S.R. 953-954). The petitioner's father testified that he had never placed any firearm or bulletproof vest in the trunk of the vehicle. (S.R. 954, 959-960, 961). Police also located in the back seat of the Oldsmobile a letter with the name "Marvin Minor" on the envelope, which was addressed to a location where the petitioner's father did not reside. (S.R. 808, 1012).

### III. PROCEDURAL HISTORY

#### The Trial

On October 17, 2008, the grand jury returned an indictment charging the petitioner with unlawful possession of a firearm as an armed career criminal, unlawful possession of ammunition, unlawful possession of a large capacity magazine, and unlawful possession of a firearm with a defaced serial number. (S.R. 194-199). On November 19, 2008, the grand jury indicted Tate for attempted murder in connection with the shooting that occurred on May 8, 2008, and indicted the petitioner as an accessory after the fact to that crime. (S.R. 200). It appears from the docket that

the new shooting-related charge was then added to the first indictment. (S.R. 204-205).

Prior to trial, the petitioner moved to sever the charge related to the shooting, i.e., the charge of being an accessory after the fact to that crime, from the firearm possession charges. The trial court agreed and the petitioner and Tate proceeded to trial on the shooting related charges only. Both were found not guilty. (S.R. 113-116, 214).

The petitioner then went to trial on the remaining firearms charges, alone. Prior to the trial, the petitioner moved in limine to exclude evidence of other bad acts, including any reference to the shooting. (S.R. 245). At the same time, the petitioner argued for the right to introduce evidence of the G.S.R. found on Tate's hands. (Id.). The petitioner argued that evidence of G.S.R. on Tate's hands meant it was more likely than not that Tate rather than the petitioner was the owner of the firearm in the trunk. (S.R. 245, 625-630).

The trial court granted the petitioner's motion to exclude evidence of the shooting, but ultimately rejected the petitioner's argument that he be allowed at the same time to introduce evidence of the G.S.R. found on Tate's hands. (S.R. 625-632). Prior to its ruling, the trial court heard argument regarding the G.S.R. evidence, focusing on two principal issues: whether there was any evidence that the firearm in the trunk had ever been fired, and

5

whether G.S.R. could be linked to a particular firearm. (S.R. 624-625, 630-632). The trial court concluded on the evidence presented that there was no evidence that the gun in the trunk had been fired, and the petitioner's counsel conceded that although he was not certain, his recollection was that the gun had not been fired. (S.R. 625). The trial judge then excluded the G.S.R. evidence, stating in part:

> [K]eeping with the integrity . . . of severing the case, we're going to continue along those lines and we're going to try two separate cases and two separate offenses and we're not going to mix the evidence up. And there is nothing here to show that there's any relation at all, gunpowder residue, to the case at hand from what is being represented to me in court today. … [Y]ou can't have it both ways; there will be no evidence regarding gunpowder residue in the case ….

(S.R. 629).

Following the trial court's ruling, the petitioner's counsel continued to push for admission of the G.S.R., prompting the trial court to note again that there was no evidence that the gun in the trunk had been fired, and to ask the petitioner's counsel whether G.S.R. evidence could be tied to a particular gun. (S.R. 630-632). When the petitioner's counsel conceded that no, it was not possible to link G.S.R. to a particular gun, the trial court reaffirmed its ruling excluding the G.S.R. evidence. (S.R. 632).

At trial, the Commonwealth's theory was that the petitioner constructively possessed the firearm found in the trunk, that is, that he knew the firearm was in the trunk and that he had the

6

ability and intention to exercise control over it. As such, the Commonwealth pursued a theory that permitted the jury to find the petitioner "possessed" the firearm even if he did not actually handle or touch the firearm. The trial court correspondingly instructed the jury that it could convict the petitioner under a theory of constructive possession. (S.R. 1133, 1154). The jury returned a verdict of guilty on all charged offenses. (S.R. 1193-1195).

### The Appeal

The petitioner appealed his conviction on several grounds, including the present claim that the trial court violated his right to present a complete defense by excluding G.S.R. evidence. *Commonwealth v. Minor*, No. 11-P-1818, 83 Mass. App. Ct. 1131, at *1 (Mass. App. Ct. May 15, 2013). The Massachusetts Appeals Court considered and quickly rejected this argument. The Appeals Court noted that its role was to "independently determine whether any error was harmless beyond a reasonable doubt." *Id.* Concluding that there was no error, the Appeals Court stated, simply, that "the defendant cannot have it both ways – he cannot simultaneously request that the judge bar the Commonwealth from presenting evidence as to the severed charges, but also request that the judge allow him to present evidence necessarily implicating the severed charges. By filing the motion in limine, the defendant foreclosed his ability to submit G.S.R. evidence." *Minor*, 83 Mass. App. Ct.

7

at *1.  The Appeals Court also noted that even had the defendant submitted the G.S.R. evidence to the jury, the jury still could have properly convicted him on a theory of constructive possession. *Id*. at *1, n.3.

The petitioner sought further appellate review in the Massachusetts Supreme Judicial Court (SJC), but the SJC denied the request without comment.  *Commonwealth v. Minor*, 466 Mass. 1101, 991 N.E.2d 187 (Table) (July 24, 2013).

**Federal Proceedings**

On May 27, 2014, the petitioner initiated this habeas matter, raising several claims.  (Dkt. No. 1).  On July 25, 2014, the respondent moved to dismiss for failure to state a claim, arguing that the petitioner had failed to exhaust certain claims, and that other claims were not cognizable on habeas review.  (Dkt. No. 17). On January 28, 2015, the Court granted the respondent's motion to dismiss in part, such that the only issue that remains for consideration is whether the trial court erred when it excluded evidence of G.S.R. on Tate's hands.  (Dkt. No. 20).

**IV.  DISCUSSION**

**A. Standard of Review**

"Federal habeas is not an ordinary error-correcting writ." *Nadworny v. Fair*, 872 F.2d 1093, 1096 (1st Cir. 1989).  It "exists to rescue those in custody from the failure to apply federal rights, correctly or at all."  *Id*.  Habeas relief is only available

8

if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (internal quotations and citations omitted). A writ of habeas corpus thus "does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

A federal court may grant a writ of habeas corpus only if the underlying state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)). Here, the petitioner does not argue that the trial court unreasonably determined the facts. This Court's task, therefore, is to "determine what arguments or theories supported the state court's decision," and then determine whether "those arguments or theories are inconsistent with the *holding* in a prior decision of [the Supreme] Court." *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (emphasis added) (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). *See also Howes v. Fields*, 565 U.S. 499, 505 (2012) (*quoting Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("In this context, 'clearly established law'

9

signifies 'the holdings, as opposed to the dicta'" of Supreme Court decisions.)).

In habeas cases, "a state court is afforded deference and latitude." *Hensley v. Roden*, 755 F.3d 724, 731 (1st Cir. 2014) (citation omitted). A state court decision is "contrary" to clearly established federal law only where "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A decision is an "unreasonable application" of federal law where "the state court correctly identifies the governing legal principle from [the Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id*. The magnitude of the error "'must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.'" *Brown v. Ruane*, 630 F.3d 62, 67 (1st Cir. 2011) (*quoting McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002)).

Upon a finding that the state court committed an error, habeas relief is nevertheless only appropriate if the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In other words, habeas relief cannot be granted for

10

"harmless" errors, which are defined as those errors that did not impact the verdict.

### B. Analysis

#### 1. The Petitioner's Argument

The petitioner contends that he wanted at trial to introduce the testimony of John Biello, a ballistician for the Massachusetts State Police. He argues that Mr. Biello, had he been permitted to testify, would have testified that G.S.R. can be used to show that an individual fired or handled a weapon. In light of this testimony, the petitioner argues that the positive finding of G.S.R. on Tate's hands, in combination with the negative finding of G.S.R. on the petitioner, makes it more likely than not that Tate possessed the firearm in the trunk, and that the petitioner did not. Because he was deprived of the ability to introduce this third-party culprit evidence, the petitioner argues that the trial court deprived him of his Sixth and Fourteenth Amendment rights to present a complete defense.

#### 2. Third-Party Culprit Evidence and the Right to Present a Complete Defense

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However,

11

this right is not absolute and it is subject to reasonable restrictions, including the state's legitimate interest in ensuring that reliable evidence is presented to the jury. *United States v. Scheffer*, 523 U.S. 303, 309 (1998).[3] The Constitution does not confer the right to present "half-truths" to a jury, and it is the trial judge's role to ensure that the evidence in front of the fact-finder is not a truncated portion, favorable to one party. *United States v. Taylor*, 484 U.S. 400, 413 (1988); *See also Crane*, 476 U.S. at 689-90 (noting that the Constitution allows "wide latitude to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues").

A trial judge's decision to exclude evidence is not an unreasonable one "if fair-minded jurists could disagree on its correctness." *See Davis v. Ayala*, 135 S.Ct. 2187, 2199 (2015) (*quoting Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Where the probative value of evidence is outweighed by other factors such as "unfair prejudice, confusion of the issues, or potential to mislead the jury," the trial judge is well within his or her discretion to exclude the evidence. *Holmes v. South Carolina*, 547 U.S. 319, 320 (2006) (applying the principles surrounding the right

---

[3] Other reasonable restrictions as identified by the *Scheffer* court include excluding evidence that: 1) replaces the jury as the assessor of credibility; 2) creates litigation over issues other than the guilt or innocence of the accused; 3) would confuse the issue before the jury; and 4) is patently unreliable. *Scheffer,* 523 U.S. at 308-316.

12

to present a complete defense in the context of third-party culprit evidence).

        3. <u>The Trial Court did not Err in Excluding G.S.R. Evidence</u>

Applying the foregoing principles here, the Court discerns no error in the trial court's decision to exclude evidence of G.S.R. on Tate's hands, nor, consequently, in the Appeals Court's subsequent rejection of the petitioner's appeal claiming error. For one, the petitioner successfully argued to exclude all evidence regarding the shooting and he can hardly be heard to complain when the trial court, endeavoring to act consistent with the spirit of the ruling the petitioner sought, declined to allow him to introduce evidence which would have been impossible for the Commonwealth to put into context without talking about the shooting itself.

And in that regard, because the petitioner's goal was to also preclude the Commonwealth from introducing such contextual evidence, the probative value of the proffered evidence clearly would have been outweighed by the unfair prejudice to the Commonwealth's case in not being able to respond to it adequately, and by the risk the evidence would confuse or mislead jurors who had no basis to consider it in its proper context.

Moreover, where the petitioner's counsel conceded that "[y]ou can't link G.S.R. to a particular gun" and that the G.S.R. evidence only made it "more likely than not that . . . Tate . . . had

13

handled the gun, more so than [the petitioner]," the probative value of the G.S.R. evidence was hardly overwhelming.

Under these circumstances, both the trial court's exclusion of the evidence and the Appeals Court's conclusion that it was not error to exclude the evidence fully comport with treatment of the issue under federal law. *Dibendetto v. Hall*, 272 F.3d 1, 7-9 (1st Cir. 2003) (trial court did not abuse its discretion in excluding third-party culprit evidence where the evidence was speculative and would "pose a real danger of distracting the jury from the case before it"); *see also Buckman v. Roden*, No. 13-cv-11413, 2015 WL 1206348, at *8-9 (D. Mass. March 17, 2015) (noting that third-party culprit evidence is inadmissible where there is limited probative value connecting the third-party culprit to the charged crime); *Ruell v. MCI Norfolk Superintendent*, No. 12-10042, 2013 WL 1175130, at *6 (D. Mass. March 19, 2013) (same).

    4. <u>Even if the Trial Court Erred, the Error was Harmless</u>

Finally, even assuming for the sake of argument that the trial court erred in excluding the G.S.R. evidence, any error was demonstrably harmless. As noted above, the Commonwealth's theory at trial was that the petitioner constructively possessed rather than actually possessed the firearm. In Massachusetts, as well as under federal law, a defendant can be convicted of unlawful firearms possession under a constructive possession theory when the defendant has "knowledge coupled with the ability and intention

14

to exercise control" over the firearm.  *See Commonwealth v. Than*, 442 Mass. 748, 751 (2004) (*quoting Commonwealth v. Brzezinski*, 405 Mass. 401, 409 (1989)); *United States v. Carpenter,* 403 F.3d 9 (1st Cir. 2005) (constructive possession can be established by evidence defendant knowingly had ability as well as intent to exercise dominion and control over firearm or area where it was found). Constructive possession may be sole or joint, and it does not require evidence of actual ownership of the firearm or even that the defendant touched or handled the firearm.  *See United States v. Ridolfi*, 768 F.3d 57, 62 (1st Cir. 2014); *United States v. Lamare,* 711 F.2d 3, 5-6 (1st Cir. 1983) (constructive possession established where defendant "could have taken actual possession" of a firearm).  As a result, as long as the jury had a basis to conclude that the petitioner knew the firearm was in the trunk and had the ability and intent to exercise control over that area, the jury could properly convict him on a theory of constructive possession even if it also heard and credited evidence that Tate had G.S.R. on his hands or, indeed, actually handled the firearm in the trunk.

In that vein, the petitioner does not challenge that there was ample evidence in the record to support a claim of constructive possession.  Among other things, the petitioner's father regularly let the petitioner borrow the vehicle in which the firearm was recovered, and had loaned the petitioner the vehicle in the days

15

leading up to the petitioner's arrest. The petitioner was driving the vehicle immediately before he was arrested, and had control over access to the trunk as the driver of the vehicle. The petitioner's father further testified that he had never placed the firearm in the trunk of his vehicle, and the police recovered an envelope addressed to the petitioner in the back seat of the vehicle.

In sum, even assuming that the trial court should have admitted evidence of the G.S.R., the evidence was surely of limited probative value where the jury could have concluded that the petitioner constructively possessed the firearm even if it also believed that Tate had at some point actually possessed the firearm. Accordingly, there is no basis to conclude that excluding the evidence had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. at 637–38.

## V. CONCLUSION

For the reasons stated above, I recommend that the petitioner's habeas corpus petition be DENIED.[4]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: July 28, 2017

---

[4] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See *Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); See also *Thomas v. Arn*, 474 U.S. 140 (1985).